IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

**BARBARA BOBBETT**     **PLAINTIFF**

**VERSUS**     **CIVIL ACTION NO. 2:08cv279KS-MTP**

**UNITED STATES OF AMERICA**     **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

This matter is before the court on a Motion to Dismiss or Alternatively for Summary Judgment **[#s13 & 15]**. The court, having reviewed the motion and being advised that the plaintiff has wholly failed to respond to same and having reviewed the pleadings and exhibits on file as well as the authorities cited by the defendant finds that the motion is well taken and should be granted. The court specifically finds as follows:

## FACTUAL BACKGROUND

On December 7, 2005, the plaintiff was seen by Dr. Duane Russell at Family Health Center, Inc. ("FHC") in Laurel, Mississippi with complaints of heavy menses and dysmenorrhea. Dr. Russell diagnosed the plaintiff with menorrhagia (heavy menstrual bleeding) and dysmenorrhea. He also indicated that he discussed the risks and benefits of a total abdominal hysterectomy and bilateral salpingo-oophorectomy. The specific details of this discussion were not documented.

On December 15, 2005, the plaintiff underwent a total abdominal hysterectomy and left salpingo-oophorectomy with lysis of adhesions at South Central Regional

Medical Center (a non-federal entity) in Laurel, Mississippi. No complications were noted during the surgery and the plaintiff had an unremarkable postoperative course. She was discharged on December 18, 2005, and noted to be tolerating a regular diet.

On December 20, 2005, the plaintiff was seen by Dr. Russell at FHC for follow-up care. She reported that she was tolerating a regular diet and had positive bowel movements. However, a month later on January 21, 2006, she reported bladder leakage since the day prior and was unable to hold her urine. Her urine was also found to be positive for leukocytes (white blood cells) and blood. In response, Dr. Russell diagnosed the plaintiff with a urinary tract infection and treated her with Levaquin.

However, a little less than a week later on January 26, 2006, the plaintiff was referred by Dr. Russell to urologist, Dr. William Senf for urinary incontinence and a bladder/vaginal fistula. Over the course of the next month, the plaintiff underwent a variety of imaging studies, which ultimately led to a diagnosis on February 7, 2006, of a vesicovaginal fissure that appeared to be in the posterior wall on the right side of the plaintiff's ureteral orifice. Notably, while undergoing examination at Mississippi Urology Clinic (a non-federal entity) on February 17, 2006, the plaintiff reported that approximately one month after her hysterectomy operation, her bladder "broke loose and started leaking." After the plaintiff received several other tests, she received a transvaginal repair of her fistula at Mississippi Baptist Medical Center (a non-federal entity) on March 20, 2006.

Barbara Bobbett's counsel, Isaac K. Byrd, Jr., sent FHC a notice of the plaintiff's medical malpractice claim on or around January 15, 2008. Mr. Byrd asserted in this notice that FHC employees negligently performed the plaintiff's hysterectomy surgery

on December 15, 2005, which resulted in a vesicovaginal fistula and urinary incontinence that was discovered on February 7, 2006.  Mr. Byrd also asserted in this notice that the plaintiff had sustained damages in the amount of $500,000.00.

Less than two weeks later on January 28, 2008, FHC faxed a copy of Mr. Byrd's January 15, 2008 notice to the Department of Health & Human Services, Office of General Counsel (hereinafter referred to as the Agency), although, it was stamped received on January 29, 2008.  On February 18, 2008, an Agency paralegal, Bettye Steve, asked FHC to forward information that verified its coverage under the Federally Supported Health Centers Assistance Act ("FSHCAA") and the Federal Tort Claims Act ("FTCA").  This information was later received by the Agency on April 29, 2008.

On May 1, 2008, Ms. Steve sent a letter to Mr. Byrd informing him that the Agency had learned of his "recent inquiry concerning the treatment of [his] client, Barbara Bobbett by an e[m]ployee of Family Health Center, Inc., a federally supported health facility."  Ms. Steve also advised Mr. Byrd that the Agency did not have any related administrative tort claims in its records.  Accordingly, Ms. Steve informed Mr. Byrd that, "[i]n the event you have a claim concerning the actions of [FHC]," the plaintiff "must first exhaust her administrative remedies as a prerequisite to the commencement of a civil action in tort."  Along with this letter, Ms. Steve enclosed a Standard Form 95 (administrative tort claim form) "for [Mr. Byrd's] use in filing a claim."

Subsequently, the plaintiff filed an administrative tort claim ("SF-95") with the Agency on May 23, 2008, which essentially made the same allegations asserted in Mr. Byrd's January 15, 2008 notice of claim letter.  Along with the administrative tort claim, Suzanne Keys (another attorney in the law firm of Byrd & Associates) wrote a letter

stating that Mr. Byrd's January 15, 2008 notice of claim letter was sent directly to FHC because FHC's federally funded status was unknown. Ms. Keys also contended that this notice of claim letter was "given within the two year statute of limitations," and; "[n]either Dr. Russell nor [FHC] responded to that letter to alert us to their federally funded status. Our first notification of this was via a letter from Ms. Betty Steve that we received on May 6th [2008]." The Agency acknowledged receipt of the claim on May 23, 2008. Thereafter, the plaintiff filed the instant action in the United States District Court for the Southern District of Mississippi on December 22, 2008.

The United States has admitted that FHC was deemed eligible for Federal Tort Claims Act coverage on October 22, 1993, and was re-deemed on June 21, 1996. They have also admitted that the involved provider, Dr. Duane Russell was an employee of FHC at all times relevant to this case.

## **STANDARD OF REVIEW**

A Rule 12(b)(1) motion attacks the court's jurisdiction to hear and to decide any issues in the case and therefore the court must address that at any time during the pendency of the litigation that is asserted or even indeed upon its own motion. *See Williamson v. Tucker*, 645 F. 2d 404 (5th Cir. 1981). It is well settled that on a 12(b)(1) motion the court may go outside the pleadings and consider additional facts, whether contested or not and may even resolve issues of contested facts.

If, however, the court limits its review to the face of the pleadings, the safeguards under Rule 12(b)(6) apply. Dismissal pursuant to Rule 12(b)(6) is appropriate if a party fails to state a claim under which relief can be granted. The allegation that the

complaint must be accepted is true when the court considers whether the plaintiff has stated a cause of action. *See Cramer v. Skinner*, 931 F. 2d 1020 (5th Cir. 1991)(*cert. denied*, 60 U.S.L.W. 3057, 112 S. Ct. 298, 116 L. Ed. 2d 242 (1991)). Only the complaint and allegations contained therein are to be considered in reaching a decision on a defendant's Rule 12(b)(6) motion to dismiss.

The complaint should not be dismissed unless it appears beyond doubt that the plaintiffs can prove no set of facts in support of his or her claims which would entitle him or her to relief. While a complaint need not contain detailed factual allegations to survive a 12(b)(6) motion, the United States Supreme court has held that a plaintiff's "obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, ____ U.S. ____ , _____ , 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929, 940 (2007)(other citations omitted).

As previously stated, if the court considers external matters to the pleadings the allegations of the complaint need not be taken as true. If the factual matters considered outside the pleadings are undisputed, the court need not make specific factual findings for the record. Conversely, if the court is called upon to make factual determinations to support its order, they should be stated specifically. *See, Williamson v. Tucker, supra*.

## **ANALYSIS**

Under the FSHCAA of 1992, 42 U.S.C. § 233(g)-(n), the FTCA, 28 U.S.C. §§

1346(b), 2401(b), 2671-2680, is the exclusive remedy for injuries or death caused by employees of a deemed community health center which occurred on or after January 1, 1993, or when the health center was deemed eligible for coverage. As mentioned above, FHC was deemed eligible for FTCA coverage on October 15, 1993, and was re-deemed on June 23, 1996, and Dr. Russell was an employee of FHC at all times relevant to this case. Therefore, this action is properly brought under the FTCA.

Under the FTCA, the United States is liable for personal injury caused by the negligent or wrongful act or omission of a federal employee under circumstances where the United States, if a private person, would be liable to the Plaintiff according to the law of the place where the act or omission occurred. 28 U.S.C. §1346(b). All relevant alleged acts and omissions in this claim occurred in the state of Mississippi; therefore, the law of this state controls the claim.

With respect to FTCA cases, 28 U.S.C. § 2401(b) makes clear that an administrative claim must be presented to the agency in writing within two years of accrual or else the action "shall be forever barred." The date on which an FTCA claim accrues is a question of federal law. *See Johnston v. U.S.*, 85 F.3d 217, 219 (5th Cir. 1996). The filing of a proper notice within the two-year limitations period is a jurisdictional prerequisite to maintaining suit in federal court. *Houston v. United States Postal Serv.*, 823 F.2d 896, 902 (5th Cir.1987), *cert. denied*, 485 U.S. 1006, (1988).

The Supreme Court explained in *United States v. Kubrick*, 444 U.S. 111 (1979), that for purposes of the FTCA a medical malpractice claim accrues as soon as the plaintiff is sufficiently "armed with the facts" of her injury's existence and its cause to alert her to the possibility of negligence. *Id.* at 123-24. Importantly, the Court in *Kubrick*

rejected the notion that the accrual of a claim "must await awareness by the plaintiff that his injury was negligently inflicted." *Id.* at 123. Rather, as soon as the plaintiff is "in possession of the critical facts that he has been hurt and who has inflicted the injury," she has a duty to seek advice from the legal and medical community as to whether she was negligently treated, and the limitations period concurrently starts to run. *Id.* at 123-24.

In addition, 28 U.S.C. § 2675(a) provides that:

> [a]n action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency...

28 U.S.C. § 2675(a). Moreover, a claim shall be deemed presented under the FTCA when the appropriate Federal Agency receives the claim. See 28 C.F.R. § 14.2(a); *Southern v. U.S.*, 503 F.Supp. 2d 829, 835 (W.D.Tex. 2007) ("An individual with a claim against the United States satisfies the Federal Tort Claims Act's (FTCA) exhaustion requirement that the claimant shall have first presented the claim to the appropriate Federal agency if the claimant: (1) gives the agency written notice of his or her claim sufficient to enable the agency to investigate, and (2) places a value on his or her claim."); *Cook v. U.S. on Behalf of U.S. Dept. of Labor*, 978 F.2d 164, 165 - 166 (5th Cir. 1992) ("Under the FTCA, a plaintiff must give notice of his claim to the appropriate federal agency. Furnishing notice is a jurisdictional prerequisite to filing suit under the FTCA. A claimant gives proper notice within the meaning of § 2675(a) only when the agency obtains sufficient written information to begin investigating and the claimant places a value on his claim.").

The United States contends that the plaintiff has failed to properly present her claim to the appropriate Federal agency within two years from the date of her claim's accrual, and therefore, has failed to exhaust her administrative remedies. Consequently, they have moved to dismiss or for summary judgment on all of her claims.

The plaintiff's primary injury for accrual purposes under the FTCA was urinary incontinence. Mr. Byrd's January 15, 2008 notice of claim letter specifically stated that as a result of the plaintiff's hysterectomy surgery, she "developed urinary incontinence on or about January 26, 2006." In addition, the primary injury identified in the plaintiff's administrative tort claim ("SF-95") was urinary incontinence as the plaintiff noted on her SF-95 form in section 10 (which instructs claimants to "state nature and extent of each injury . . ."), that she suffered, "urinary incontinence, the cost and pain and suffering of the subsequent surgery needed to repair the hole in her urinary tract."

Moreover, the medical record indicates that Plaintiff's chief complaint after her surgery was urinary incontinence. On January 21, 2006, the plaintiff reported complaints of bladder leakage since the day prior and had an inability to hold her urine. A little less than a week later on January 26, 2006, Dr. Russell specifically referred the plaintiff to Dr. Senf for "urinary incontinence" and a "bladder/vaginal fistula." Also, Mississippi Urology Clinic records document that on February 17, 2006, the plaintiff reported that approximately one month after her hysterectomy surgery, her bladder "broke lose and started leaking."

As the Court in *Kubrick*, stated, as soon as a plaintiff is "in possession of the critical facts that he has been hurt and who has inflicted the injury," the plaintiff has a

duty to seek advice from the legal and medical community as to whether he was negligently treated, and the limitations period concurrently starts to run. *Kubrick v. U.S.*, 444 U.S. at 123-24. The plaintiff understood she was hurt when she discovered her urinary incontinence as early as January 21, 2006, but certainly no later than January 26, 2006.

In response to section 6 of the plaintiff's SF-95 (which instructs claimants to state the "date and day of accident"), the plaintiff wrote "discovered February 7, 2006." While not entirely clear, the plaintiff's response to section 6 suggests that she discovered her injuries on February 7, 2006 (which was the date that diagnostic testing confirmed the location of her vesicovaginal fissure). However, it is clear from the medical record that she learned of both her injury (urinary incontinence) and its cause prior to February 7, 2006.

As to any argument that the plaintiff's claim did not accrue until she had definitive evidence that her urinary incontinence was caused by a vesicovaginal fistula, which was provided by the results of diagnostic testing on February 7, 2006, the plaintiff's knowledge of the exact medical cause of her injury was not required in order to trigger accrual of her claim. The Fifth Circuit has stated that a putative plaintiff in FTCA medical malpractice actions:

> need not know the legal or medical significance of an act or an injury for the cause of action to accrue. Instead, the limitations period begins to run when the plaintiff has knowledge of facts that would lead a reasonable person (a) to conclude that there was a causal connection between the treatment and injury or (b) to seek professional advice, and then with that advice, to conclude that there was a causal connection between the treatment and injury.

*MacMillan v. U.S.*, 46 F.3d 377, 381 (5th Cir. 1995) (internal quotations omitted). A

sister federal district court in Texas cited *MacMillan* as supporting the proposition that, "assigning a precise medical cause for an injury is not necessary for providing notice of cause within the meaning of *Kubrick*." *Johnson v. U.S.*, 2005 WL 1605822 at *18 (W.D. Tex. 2005) (Not reported).

## **CONCLUSION**

The court therefore finds that the plaintiff's claims accrued on or before January 26, 2006. Thus her administrative tort claim was due no later than January 26, 2008. The Agency received Mr. Byrd's January 15, 2008 notice of claim letter no earlier than January 28, 2008, and the plaintiff's SF-95 on May 23, 2008. As such, the Agency received both of these documents more than two years from the date of accrual in this matter. The court finds that the plaintiff has consequently failed to exhaust her administrative remedies, and therefore, this court lacks subject matter jurisdiction to hear her medical malpractice claims.

IT IS THEREFORE ORDERED AND ADJUDGED that the Motion to Dismiss or Alternatively for Summary Judgment **[#s13 & 15]** is granted and the plaintiff's Complaint is dismissed with prejudice and that any other pending motions are denied as moot. A separate judgment shall be entered herein in accordance with Rule 58, Federal Rules of Civil Procedure.

SO ORDERED AND ADJUDGED this the 28th day of September, 2009.

*s/ Keith Starrett*
UNITED STATES DISTRICT JUDGE